

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO
Attorney General

LESLIE G. LEACH
Executive Deputy Attorney General
Division of State Counsel

Writer's Direct Dial: (212) 416-8357

JUNE DUFFY
Assistant Attorney General in Charge
Litigation Bureau

February 17, 2009

**VIA ECF & FIRST-CLASS MAIL**
Honorable Frederic Block
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Norris v. New York City College of Technology, et al., 07 CV 853 (FB) (JO)

Your Honor:

  The Office of the Attorney General represents defendants the City University of New York ("CUNY") (s/h/a New York City College of Technology ("City Tech")) and Russell K. Hotzler (collectively, "Defendants") in the above-referenced action. Pursuant to Your Honor's Memorandum and Order, dated January 14, 2009, I write to address the issue of when Plaintiff's employment at City Tech would have ended had she not been terminated in December 2004, for purposes of determining an award of backpay, based upon the Court's finding that Plaintiff's "continued employment at City Tech was not a long-term proposition ... any 'exit strategy' acceptable to Hotzler would have been a matter of months, not years[.]"[1] As set forth below, the undisputed record adduced during discovery and at trial establishes that the very latest date through which Plaintiff could have otherwise continued her employment at City Tech was June 2, 2005, the last day of the 2004-2005 academic year. Accordingly, any backpay award should be limited to $15,601.96, which represents the difference between what Norris would have been paid had she remained at City Tech until the end of the 2004-2005 academic year and what she

---

[1] Also submitted herewith is the Post-Trial Declaration of Russell K. Hotzler ("Hotzler Decl."), together with the exhibits marked A, B, C and D annexed thereto. All references herein to: (1) "Hotzler Dep." are made to the deposition testimony of Russell K. Hotzler, relevant excerpts of which are annexed hereto as Exhibit E; (2) "Norris Dep." are made to the deposition testimony of plaintiff Dixie Norris, relevant excerpts of which are annexed hereto as Exhibit F; and (3) "Trial Tr." are made to the trial testimony in this action, relevant excerpts of which are annexed hereto as Exhibit G.

Honorable Frederic Block
February 17, 2009
Page 2

was paid after she was discharged in December 2004, which was 25% of her salary plus an additional sum for 55 days of annual leave.

During his deposition and at trial, President Hotzler testified that he asked for Plaintiff's resignation and for an "exit strategy" on November 18, 2004, almost a month before the termination of Plaintiff's employment at City Tech on December 17, 2004.  See Hotzler Dep. 72:11-73:15; Trial Tr. 637:2-638:20 (Testimony of Hotzler).  It is undisputed that President Hotzler again requested that Plaintiff provide him with an exit strategy on December 14 and December 17, 2004.  See Trial Tr. 186:12-189:18, 190:18-191:14 (Testimony of Norris); Hotzler Dep. 83:15-84:14, 97:13-19; Norris Dep. 96:3-9.  Moreover, Plaintiff admitted at trial that she understood President Hotzler's requests for an exit strategy to be requests for a departure date and that "exit means exit."  See Trial Tr. 716:4-9 (Testimony of Norris).

President Hotzler repeatedly testified to his efforts to work with Plaintiff to reach a mutually agreeable exit strategy and his willingness to allow her to remain at the institution until the end of the 2004-2005 academic year.  During his deposition, he stated that on or about November 18, 2004, he told Plaintiff:

> in keeping with the normal procedures regarding [Executive Compensation Plan] employees, ***I was agreeable to working out a situation whereby she could remain at the college for the remainder of the academic year in her position*** while I conducted a search for a vice-president; and I offered her the opportunity of actually providing me with another strategy, another exit strategy, that would be in keeping with her interests in order to have an amicable separation from the institution.

Hotzler Dep. 66:25-67:4, 73:4-15 (emphasis supplied).  Similarly, at trial, President Hotzler testified:

> It is customary, with executive plan appointees, especially vice presidents, to resolve these matters in a professional way.  In asking for her resignation, I offered her a number of possibilities.  ***I offered her the opportunity to stay at the college for the remainder of the academic year*** while I made other arrangements for the administrative and finance area, and I offered her the opportunity of coming back to me with another exit strategy that would provide her with an option that would be of benefit to her.

Trial Tr. 636:12-20 (Testimony of Hotzler) (emphasis supplied).  Thus, in any event, Plaintiff would not have been permitted to continue her employment at City Tech beyond the end of the 2004-2005 academic year, which was June 2, 2005.  See Hotzler Decl. at ¶ 5, Ex. D.

It is undisputed that Plaintiff did not provide President Hotzler with an exit strategy in response to his repeated requests.  See Trial Tr. 290:14-25 (Testimony of Norris).  Due to her

Honorable Frederic Block
February 17, 2009
Page 3

persistent non-responsiveness, Plaintiff was discharged effective December 17, 2004.  See Hotzler Decl. at ¶ 2.  Upon her termination, Plaintiff was provided with three months of her annual salary, which was calculated as 25% of her salary and amounted to $34,350.  See Hotzler Decl. at ¶ 3, Ex. B.  In addition, Norris was paid an additional sum for 55 days of annual leave, which she had accrued but not used during her tenure at City Tech, which amounted to $13,023.04.[2]  See Hotzler Decl. at ¶ 3, Exs. B & C.  Thus, Plaintiff received a total of $47,373.04 in severance payments upon the termination of her employment.

While President Hotzler testified at trial that he offered Plaintiff "a number of possibilities" when requesting her resignation, this referred *only* to the level of responsibility that Plaintiff would continue to have during the remainder of her employment at City Tech once an exit strategy was in place.  See Hotzler Decl. at ¶ 6.  The "number of possibilities" did not refer to whether Plaintiff could continue her employment beyond June 2, 2005, whether she would be required to use any accrued leave, or whether she would receive any severance payment.  See id.  Had Plaintiff remained in her position until the end of the 2004-2005 academic year, she would not have been entitled to three months of severance pay, and she would have been required to use her annual leave during the remainder of her employment.  See Hotzler Decl. at ¶ 4.

The 2004-2005 academic year at City Tech ended on June 2, 2005, which was the date of the college's graduation.  See Hotzler Decl. at Ex. D.  Thus, had Norris continued her employment at City Tech from December 18, 2004 through June 2, 2005, she would have earned five and one-half months salary during that time, which amounts to $62,975.

Accordingly, based upon Your Honor's January 14, 2009 Memorandum and Order, any backpay award should be limited to $15,601.96, which represents the difference between what Norris would have been paid had she remained at City Tech until the end of the 2004-2005 academic year and what she was paid after she was discharged in December 2004.

    Respectfully Submitted,

    /s/

    Karen Dahlberg
    Assistant Attorney General

cc:   Lois Schlissel, Esq. (Via ECF)
      Richard S. Corenthal, Esq. (Via ECF)
      Joni H. Kletter, Esq. (Via ECF)

---

[2] Norris was paid for 57 days on January 21, 2005 rather than 55 days because she had already been paid for three days after her termination date and was owed five days of deferred salary.  See Hotzler Decl. at Ex. C.  The $13,023.04 figure is based on the amount she was paid on January 21, 2005 ($13,496.61) divided by 57 and multiplied by 55.