UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DIXIE K. NORRIS,

      Plaintiff,

  -against-                                      **MEMORANDUM AND ORDER**
                                                    Case No. 07-CV-853

NEW YORK CITY COLLEGE OF
TECHNOLOGY, CITY UNIVERSITY OF
NEW YORK and RUSSELL K. HOTZLER,

      Defendants.
--------------------------------------------------------x

*Appearances:*

| For the Plaintiff: | For the Defendants: |
|---|---|
| LOIS CARTER SCHLISSEl, ESQ. | ANDREW M. CUOMO, ESQ. |
| RICHARD S. CORENTHAL, ESQ. | Attorney General of the State of New York |
| JONI S. KLETTER, ESQ. | By: CHRISTINE A. RYAN, ESQ. |
| Meyer, Suozzi, English & Klein, P.C. |      KAREN DAHLBERG, ESQ. |
| 1350 Broadway, Suite 501 |      Assistant Attorneys General |
| New York, NY 10018 | 120 Broadway, 24th Floor |
| | New York, NY 10271 |

**BLOCK, Senior District Judge:**

        On October 5, 2009, the parties appeared for an evidentiary hearing regarding plaintiff Dixie K. Norris's ("Norris") claim of back pay. In lieu of presenting evidence, the parties agreed to treat December 17, 2004, through June 2, 2005, as the appropriate period for back pay, with Norris reserving the right to argue on appeal that back pay should run through the date of judgment.[1] The parties further agreed (1) that the base amount of back pay for that period was $61,133.28, and (2) that defendant New York City College of Technology ("City Tech") would

---

[1] As the Court explained in its Memorandum and Order of January 14, 2009, an award of back pay through the date of judgment is not justified here because the facts established at trial demonstrate that "Norris's employment at City Tech would have lawfully ended long before the date of the jury's verdict." *Norris v. New York City Coll. of Tech.*, 2009 WL 82556, at *10 (E.D.N.Y. Jan. 14, 2009).

make contributions covering that period, in the amount of $2,445.32, to its employee pension fund on Norris's behalf.

Based on the parties' agreements, it remains for the Court to determine whether its award of back pay should be reduced to reflect the $5,040.14 in unemployment insurance benefits and the $34,350.00 in severance benefits received by Norris following her termination.[2] In addition, the Court must calculate prejudgment interest.

**A. Unemployment Insurance**

The Second Circuit has held that "the decision whether or not to deduct unemployment benefits from a Title VII back pay award rests in the sound discretion of the district court." *Dailey v. Societe Generale*, 108 F.3d 451, 460 (2d Cir. 1997). In exercising that discretion, the district courts of this circuit have generally declined to make the deduction by invoking the collateral source rule. *See Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 232 (S.D.N.Y. 2001) (collecting cases). That rule is based on the reality that benefits paid by a third party – a collateral source – will amount to a windfall for the plaintiff if they are not deducted, and for the defendant if they are deducted. *See id.* ("[B]ecause unemployment benefits are paid by a state agency rather than by [the defendant] directly, either [the plaintiff or [the defendant] will receive this 'windfall' no matter how the benefits are treated."). *Shannon* and the other district court cases rely

---

[2]At the October 5th hearing, defendants took the position that the award should be further reduced by the $13,023.04 that Norris received from City Tech as compensation for unused vacation leave because she would have been required to use that leave as part of any "exit strategy." Defendants' post-hearing submission makes clear, however, that they have abandoned that argument. *See* Letter from C. Ryan & K. Dahlberg (Oct. 9. 2009) at 4 ("In sum, Plaintiff's lost wages from December 17, 2004 through June 2, 2005 are $61,133.28. After adding $2,445.32 in pension benefits and deducting $5040.14 in unemployment insurance benefits paid to Plaintiff and deducting $34,350 in severance payments paid to Plaintiff, the total back pay award, before interest is $24,188.46.").

2

on *Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 258 (2d Cir. 1991), a pre-*Dailey* case in which the Second Circuit, in *dicta*, quoted with approval the Third Circuit's observation that, "[a]s between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer." *Id.* at 258 (quoting *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 795 (3d Cir. 1985)).

As defendants point out, the rationale for the collateral source rule disappears "when the employer itself is the source of the benefit -- that is, where the source of the benefit is not 'collateral.'" *EEOC v. Yellow Freight Sys., Inc.*, 2001 WL 1568322, at *1 (S.D.N.Y. Dec. 6, 2001). Thus, in *Stratton v. Department for the Aging*, 922 F. Supp. 857 (S.D.N.Y. 1996), the court found the collateral source rule inapplicable because the employer had elected "to make payments for the unemployment compensation claims paid out to its former employees, rather than making contributions to the state unemployment insurance fund." *Id.* at 866 n.8. Similarly, in *Williams v. Secretary of Navy*, 853 F. Supp. 66 (E.D.N.Y. 1994), the court found the rule inapplicable because the employer "reimburse[d] the Federal Employees Compensation Account in an amount equal to unemployment compensation paid to its employees." *Id.* at 72.

Defendants do not argue that City Tech either directly paid Norris's unemployment insurance benefits or reimbursed the New York State Department of Labor ("NYSDOL") for its outlay. Instead, they argue that the benefits should be deducted because both City Tech and NYSDOL are arms of the State. While it is true that, in some ultimate sense, both City Tech and NYSDOL resort to the same State coffers, they are nevertheless separate entities with separate budgets. Deducting Norris's unemployment insurance benefits from her back pay award would mean transferring the cost of those benefits from City Tech to NYSDOL, and thereby relieving City

3

Tech of the consequences of its unlawful actions – the very "windfall" the collateral source rule strives to avoid. Therefore, the Court will not make the deduction. Whether the State elects to recover those benefits is a matter between NYSDOL and Norris. *See In re Conroy*, 818 N.Y.S.2d 632, 633 (3d Dep't 2006) (noting that New York Labor Law authorizes Commissioner of Labor to recoup benefits following "retroactive payment of compensation" by employer).

**B. Severance Benefits**

It is undisputed that Norris would not have received severance benefits from City Tech had she not been terminated. It follows, therefore, that those benefits must be deducted from her award of back pay. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 166 (2d Cir. 1998) ("The [district] court correctly held that [the back pay award] was required to be reduced by the estimated $63,274 that Kirsch earned in working for Tomen during that period *and the $20,769 in severance payments he received from Fleet Street*." (emphasis added)); *Munnelly v. Memorial Sloan Kettering Cancer Ctr.*, 741 F. Supp. 60, 62 (S.D.N.Y. 1990) ("[F]ailure to offset any damage award by the amount of his severance pay would put Munnelly in a better position than he would have been had he not been terminated.").

**C. Prejudgment Interest**

Based on the parties' agreements and the foregoing rulings, the principal amount of the back pay award is $29,228.60 ($61,133.28 + $2,445.32 - $34,350.00). The parties agree that Norris is entitled to prejudgment interest on the award and, in addition, agree as to the method that should be used to calculate prejudgment interest:

> First, the awards should be divided pro rata over the appropriate time period. Second, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied. Third and finally, in order to guarantee complete

compensation to the plaintiff, the interest will be compounded annually.

*Robinson v. Instructional Sys., Inc.*, 80 F. Supp. 2d 203, 208 (S.D.N.Y. 2000) (citations omitted).

That methodology yields the following calculations:[3]

| Period | Principal | Rate | Interest |
|---|---|---|---|
| 12/18/04 to 6/2/05 | $29,228.60 | 3.62% | $226.15 |
| 6/3/05 to 12/31/05 | | | $613.80 |

---

[3]For the period December 18, 2004, to June 2, 2005, the Court prorated both the net award and the interest rate over the 12 two-week intervals comprising that period, and calculated interest according to the following formula:

$$I = (2435.72/0.0014) \times (1.0014^{12}-1) - 29{,}228.60.$$

For the periods June 3, 2005, to December 31, 2005, and January 1, 2009, to November 18, 2009, the Court prorated the applicable interest rate. All interest rates were obtained from http://www.federalreserve.gov/releases/h15/data.htm.

5

| | | | |
|---|---|---|---|
| 2006 | $30,068.55 | 4.94% | $1,485.39 |
| 2007 | $31,553.94 | 4.53% | $1,429.39 |
| 2008 | $32,983.33 | 1.83% | $603.59 |
| 1/1/09 to 11/18/09 | $33,586.92 | 0.49% | $144.42 |
| | | **TOTAL** | **$4,502.74** |

**D. Conclusion**

Norris is awarded $33,487.65, consisting of $26,783.28 in back pay, $2,445.32 in back pension contributions (to be paid directly into City Tech's employee pension fund), and $4,502.74 in prejudgment interest. She is also entitled to the $75,000.00 in compensatory damages awarded by the jury.

The only remaining matter – apart from attorneys' fees and costs – is the amount of punitive damages. Norris has rejected the Court's proposed *remittitur* and instead elected a new trial on that issue. The retrial has been assigned to Visiting Judge Melançon, and is scheduled to begin on January 5, 2010.

Until the amount of punitive damages is determined, the Court cannot enter final judgment or certify the entry of a partial final judgment under Federal Rule of Civil Procedure 54(b):

> [A] judgment cannot be considered final as long as it leaves open the question of additional damages. . . . [T]he district court may utilize its Rule 54(b) powers with respect to a given claim only if all damages stemming from that claim have been fixed.

*See International Controls Corp. v. Vesco*, 535 F.2d 742, 748 (2d Cir. 1976); *see also Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1155 (3d Cir. 1990) ("[A] count for punitive damages,

although of a different order than compensatory damages, does not constitute a separate claim under Rule 54(b)."). Once the proceedings regarding the amount of punitive damages are completed, the Court will update its calculation of prejudgment interest on the back pay award and enter judgment accordingly.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 18, 2009